**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

————————————————————————

ARTHUR CROWELL                           :
                                         :
              Plaintiff,                  :
                                         :
       vs.                               :            NO.
                                         :
FREEDOM FOREVER CONNECTICUT LLC,         :
                                         :
SOLAR MOSAIC, INC.,                      :
                                         :
              Defendants.                 :
————————————————————————  :

**COMPLAINT**

I.    **INTRODUCTION**

1.   This is an action for damages and other relief brought by an elderly consumer
     pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA"), the Truth in
     Lending Act ("TILA"), 15 U.S.C. §1601, *et seq*., and the federal Fair Credit
     Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq*., and state law prohibiting the
     exploitation of elderly persons.

2.   Plaintiff is an 81-year-old senior citizen who resides in West Hartford,
     Connecticut. The Plaintiff suffers from mild dementia.

3.   Defendants are in the business of soliciting consumers for the purchase of solar
     panels and/or installing solar panels on consumers' homes. Defendants' sales
     agents solicit consumers at their homes to enter into 25 to 30-year loans and
     other contracts using electronic tablets such as iPads.

1

4. Applicable law requires that Defendants provide consumers with a copy of the contract documents at the time of signing. The law also affords consumers the right to cancel the contract within three business days of receiving the contract.

5. The elderly Plaintiff's signatures and the signature dates were forged on the loan contract documents. Defendants also fraudulently obtained access to Plaintiff's credit reports and bank account information.

6. At the time that the solar panels were placed on the Plaintiff's home, the Defendants did not provide the Plaintiff with any documentation whatsoever. Defendants did not provide written disclosures regarding the existence of a loan, the annual percentage rate, the finance charge, or the amount financed.

7. Defendants also violated the FRCA, which restricts access to consumer credit reports except for specific, statutorily enumerated purposes under 15 U.S.C. §1681b(f).

8. Defendants, without notice or permission, accessed Plaintiff's credit report under false pretenses, without authorization.

## II.  <u>JURISDICTION</u>

9. Jurisdiction arises under the Consumer Credit Protection Act, 15 U.S.C. §1640(e), (TILA) and §1681p (FRCA), actionable through 28 U.S.C. §1331.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

## III.  <u>PARTIES</u>

11. The Plaintiff, Arthur Crowell, is a consumer who resides in West Hartford, CT.

12. Solar Mosaic, Inc., ("Mosaic") is a California corporation with a principal office at 601 12th Street, Suite 325, Oakland, California 94607.

13. Mosaic is in the business of offering consumers loans for residential solar panels.

14. Defendant, Freedom Forever Connecticut, LLC, ("Freedom Forever") is a limited liability company with a principal office at 43445 Business Park Drive, Suite 104, Temecula, California 92590.

15. Freedom Forever is in the business of solar energy contracting and solar energy equipment, products, services, and installation.

16. At all times relevant, the Defendants acted for the benefit of and on behalf of each other, and Defendant Freedom Forever acted as the agent of Defendant Mosaic.

17. Upon information and belief, the Defendants carry on a symbiotic business relationship in which Freedom Forever solicits customers at their homes on behalf of and for the benefit of Mosaic. Freedom Forever sells and installs the solar panels, and Mosaic finances the transactions. The Defendants rely and depend on each other to carry out this course of business.

IV.    **STATEMENT OF CLAIM**

18. In or about June 2021, Mr. Crowell was solicited by a salesperson at Plaintiff's home in West Hartford, CT. Mr. Crowell was seventy-eight years old at the time.

19. On information and belief, the salesperson, a male, stating his name as Steve, was employed by and/or acting as an agent of all the Defendants.

20. Defendants' agent Steve told Mr. Crowell that he, Mr. Crowell, would have his electric bill reduced by half or more by having solar panels installed on his home.

21. Mr. Crowell asked Steve how much it would cost. Steve said "don't worry about money, it will be taken care of" to Mr. Crowell.

22. In July 2021, Steve returned to Mr. Crowell's home and told Mr. Crowell that Mr. Crowell's roof was deteriorated and that Mr. Crowell would need a new roof in order to install solar panels. Steve told Mr. Crowell that he, Steve, would make the arrangements for a new roof.

23. Mr. Crowell again asked Steve how much it would cost. Steve again said "it will be taken care of, don't worry about it" to Mr. Crowell.

24. Steve asked Mr. Crowell to identify his electric company and the amount of his monthly electric bill. Mr. Crowell stated that his electric company was Eversource and that his electric bill was about $215.00 per month.

25. In late July 2021 about five men showed up at Mr. Crowell's home and installed a new roof. Steve came by while the new roof was being installed. Mr. Crowell repeatedly asked Steve how much the cost was. Steve repeatedly told Mr. Crowell that "it will be taken care of, don't worry about it."

26. The people placing the new roof were never identified to Mr. Crowell, and Mr. Crowell, despite requesting, never received any documents, paperwork or invoices pertaining to the materials and labor costs for the new roof.

27. In mid-August 2021 about five people came to Mr. Crowell's home and installed the solar panels. Steve did not come to Mr. Crowell's home when the solar panels were being installed. The people placing the solar panels never identified themselves to Mr. Crowell, and Mr. Crowell, despite requesting at the time, never

received any documents, paperwork or invoices pertaining to the materials and labor costs for the installation of the solar panels.

28. In early September 2022, while reviewing his August 2022 bank statement from Franklin Trust Credit Union, Mr. Crowell noticed a withdrawal from an entity identified as Mosaic. Mr. Crowell had never heard of Mosaic, and he had no idea what it was and why there was a withdrawal from his account by Mosaic. Mr. Crowell called Franklin Trust Credit Union and the credit union representative verified that there was a withdrawal by Mosaic from Mr. Crowell's account. There was a telephone number for Mosaic listed on the withdrawal entry.

29. Mr. Crowell called Mosaic. A customer service representative from Mosaic told Mr. Crowell that he owed money to Mosaic. Mr. Crowell requested documents from Mosaic pertaining to the money Mosaic claimed he owed. Mr. Crowell received documents from Mosaic by postal mail on or about September 20, 2022. The cover letter to the documents was dated September 14, 2022. Upon reviewing the documents, Mr. Crowell saw that they pertained to the solar panels installed on his home. This was the first time that Mr. Crowell received any documentation pertaining to the solar panels installed on his home in August 2021.

30. The documents first reviewed by Mr. Crowell on or about September 20, 2022, included a titled "Disclosure and Consent to Electronic Receipt of Loan Disclosures" (hereinafter "Disclosure and Consent"). The Disclosure and Consent stated that in order to submit a credit application to Mosaic, Mr. Crowell had to consent to receiving the loan disclosures in electronic format only and that

Mosaic is not required to send paper documents. The "Disclosure and Consent" document had a DocuSign electronic signature of Mr. Crowell and a date of November 10, 2021.

31. Mr. Crowell did not use a computer or any type of electronic device to provide a DocuSign electronic signature to the "Disclosure and Consent" or any loan documents from Mosaic on November 10, 2021, or on any other date.

32. The documents first reviewed by Mr. Crowell on or about September 20, 2022, included a titled "Authorization and Consent to Share Application Information" (hereinafter "Authorization and Consent"). The Authorization and Consent stated that Mr. Crowell was authorizing the installation contractor, including its employees and third-party providers, to assist him in completing and submitting his application to Mosaic. The stated assistance included authorizing the installation contractors to access his credit bureau reports. The "Authorization and Consent" document had a DocuSign electronic signature of Mr. Crowell and a date of November 10, 2021.

33. Mr. Crowell did not use a computer or any type of electronic device to provide a DocuSign electronic signature to the "Authorization and Consent" or any loan documents from Mosaic on November 10, 2021, or on any other date.

34. The documents first reviewed by Mr. Crowell on or about September 20, 2022, included a titled "Federal Truth in Lending Act Disclosure", (hereinafter "TILA Disclosure"). The TILA Disclosure states that Mr. Crowell was agreeing to finance $55,681.29 at APR 1.99%(e) for 358 monthly payments totaling $74,397.55(e). The last payment would be due on December 25, 2051. The "TILA Disclosure"

document had a DocuSign electronic signature of Mr. Crowell and a date of November 10, 2021.

35. Mr. Crowell did not use a computer or any type of electronic device to provide a DocuSign electronic signature to the "TILA Disclosure" or any loan documents from Mosaic on November 10, 2021, or on any other date.

36. The documents first reviewed by Mr. Crowell on or about September 20, 2022, at Page 3 referenced "Buyers Right to Cancel", stating that the buyer may cancel the transaction at any time prior to midnight of the third business day after the date of the transaction. At Page 14, the acknowledgment of "Buyers Right to Cancel" had a DocuSign electronic signature of Mr. Crowell and a date of November 10, 2021.

37. Mr. Crowell did not use a computer or any type of electronic device to provide a DocuSign electronic signature to the acknowledgment of "Buyers Right to Cancel" or any loan documents from Mosaic on November 10, 2021, or on any other date.

38. The documents first reviewed by Mr. Crowell on or about September 20, 2022, contained an Authorization for Direct Payment via ACH, (hereinafter "ACH Authorization") The "ACH Authorization" document had a DocuSign electronic signature of Mr. Crowell and a date of November 10, 2021.

39. Mr. Crowell did not use a computer or any type of electronic device to provide a DocuSign electronic signature to the "ACH Authorization" or any loan documents from Mosaic on November 10, 2021, or on any other date.

40. When soliciting Mr. Crowell in June and July 2021, the Defendants' agent Steve did not mention anything about a loan or the need for a credit check.

41. When soliciting Mr. Crowell in June and July 2021, the Defendant's agent Steve did not mention anything about pulling credit, nor did Steve ask Mr. Crowell for permission to do the same.

42. Mr. Crowell did not consent to Defendants using or obtaining his credit reports.

43. Defendants surreptitiously and intentionally obtained and used Mr. Crowell's credit reports from the credit-reporting agencies.

44. Mr. Crowell did not authorize Defendants to use or obtain his credit reports at any time.

**<u>Defendants Forged the Loan Documents</u>**

45. Even *assuming arguendo* that Mosaic emailed documents for Mr. Crowell to review and DocuSign, which is denied, the documents dated November 10, 2021, would have been emailed well after the August 2021 installation of the solar panels.

46. Defendants' agent Steve never came to Plaintiff's home after July 2021, and the Plaintiff never met with Steve in person or conversed with Steve by any other means after July 2021.

47. The Plaintiff is elderly and lacking in knowledge of computer use. The Plaintiff never logged into a computer and viewed loan documents at any time including on November 10, 2021.

48. Defendants' agent Steve never presented an electronic tablet device to Mr. Crowell and/or asked Mr. Crowell to tap a screen at any time including on November 10, 2021.

49. Defendants never provided a copy, either electronically or hard copy of any contract, invoice, or other paperwork to Mr. Crowell, including notice of right to cancel, at the time of the installation of the solar panels which was in July to August 2021.

50. Mr. Crowell never knew that he had taken out a 30-year loan for solar panel installation on his home until September 20, 2022, when he received the paper copies of the loan documents that were postal mailed to him by Mosaic.

51. Mr. Crowell sincerely believed that the solar panels were free under a government program for senior citizens, because when he repeatedly asked Defendants' agent Steve how much everything would cost, Steve repeatedly told him not to worry about that.

52. Mr. Crowell never received any type of purchase contract for the solar panels. The only reference to the solar panel company, namely Defendant Freedom Forever LLC, was on the loan documents from Mosaic, first received and first reviewed by Mr. Crowell on September 20, 2022, more than a year after the installation.

53. Mr. Crowell never received any type of purchase contract for the new roof that Defendant's agent Steve told Mr. Crowell was needed for the solar panels.

54. Mr. Crowell never had any issues with his roof prior to the solicitation for the solar panels. Mr. Crowell believes that he was tricked into getting a new roof that was unnecessary.

55. The thirty-year loan contract contains multiple forged electronic signatures of Mr. Crowell. The thirty-year loan contract bears the November 10, 2021, forged electronic date accompanying the multiple forged electronic signatures of Mr. Crowell.

56. Defendants inserted a false transaction date and a false date on the notice of right to cancel on the loan contract. The date inserted by Defendants was November 10, 2021. The transaction, the solar panel installation, was completed in August 2021 and the right to cancel would have expired in August 2021.

57. The people who installed the new roof and who installed the solar panels were never identified either orally or in writing to Mr. Crowell. Since no purchase contracts were ever provided to Mr. Crowell either electronically or hard copy, there was no way for Mr. Crowell to determine if the installers were licensed Home Improvement Sales Contractors by the State of Connecticut.

**<u>Damage from Defendants' Fraudulent Conduct</u>**

58. Plaintiff is burdened with a loan contract that, in addition to his electricity bill, has him paying more on a monthly basis than he was paying before the installation.

59. Plaintiff is burdened with a loan contract that has him making payments until the year 2052. At the time Plaintiff was solicited by the Defendants' agent in 2021, he was 78 years old, retired on a fixed income and in the early stages of dementia.

60. Defendants deem Plaintiff bound by the forged documents and the payment terms therein, and continue to take payments from Plaintiff's bank account.

61. Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Plaintiff being fraudulently duped into contracts he never saw, burdened with solar panels and a new roof under terms he never agreed to, and subjected to demands for payment pursuant to forgeries. Moreover, Plaintiff has suffered mental and emotional distress, worry, and aggravation as a result of Defendant's actions.

## COUNT I:
### Fair Credit Reporting Act
### (Plaintiff v. All Defendants)

62. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

63. Defendants have violated the Fair Credit Reporting Act by willfully and/or negligently using and obtaining Plaintiff's consumer credit reports without a statutorily permissible purpose and upon false pretenses. 15 U.S.C. §§ 1681b(f), 1681n, 1681o, 1681q. Defendants' willful and/or negligent conduct includes but is not limited to the following:

   a. Continuing to give sales agents access to electronic tools that allow them to obtain a consumer's credit report without the consent of the consumer;

   b. Failing to adopt policies, procedures, and practices that would prevent sales agents from obtaining a consumer's credit report without the consent of the consumer;

c. Failing to supervise sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

d. Failing to train sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

e. Failing to discipline sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

f. Employing quotas and/or sales goals/metrics that incentivize sales agents to pull credit reports without the consent of the consumer.

64. Defendants' willful and/or negligent corporate action and/or inaction proximately caused damage to the Plaintiff.

## COUNT II
## TRUTH IN LENDING ACT

65. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

66. The Truth in Lending Act mandates that lenders disclose certain "costs of credit" associated with the transaction. Accurate disclosure of the "amount financed," the "finance charge" and the "Annual Percentage Rate" (APR) is necessary in order for consumers to be able to make meaningful comparisons of credit alternatives, and are mandatory disclosures. 15 U.S.C. §1638.

67. Terms such as "amount financed," "finance charge", and "annual percentage rate" must be used, as well as a "descriptive explanation" of each of these terms. 15 U.S.C. §1638(a).

68. The TILA mandates that these disclosures be written in a manner that is accurate, clear and conspicuous, and that they are provided at the time of the transaction that is being financed. 15 U.S.C. §§1632(a), 1638(a)(2)-(5); Reg. Z, §1026.17(a).

69. Defendant did not comply with the requirements of the TILA.


**COUNT III**
**Unfair or Deceptive Practices in Violation of the**
**Connecticut Unfair Trade Practices Act**
**(Plaintiff v. All Defendants)**

70. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

71. CUTPA provides, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. §42-110b(a).

72. Each Defendant is a "person" within the meaning of Conn. Gen. Stat. §42-110b, as defined in §42-110a(3).

73. The actions of Defendants were done in the conduct of trade or commerce.

74. Defendants are subject to the Home Solicitation Sales Act ("HSSA").

75. The HSSA provides that any violation of its provisions in sections 42-135a, or 42-137 to 42-139, or the "failure to honor any provisions of the notice of cancellation required by this chapter shall constitute an unfair or deceptive act or practice as defined by section 42-11b." Conn. Gen. Stat. §42-141(b).

76. Defendants are also subject to the Home Improvement Act ("HIA"), Conn. Gen. Stat. §20-418 et seq.

77. The HIA Provides that any violations of its provisions shall be deemed an unfair or deceptive act or practice under Conn. Gen. Stat. §42-110b(a). Conn. Gen. Stat. §20-427.

78. Defendants have engaged in unfair and/or deceptive acts or practices within the meaning of Conn. Gen. Stat. §42-110b(a) including, but not limited, to:

   a. Violating Conn. Gen. Stat. §42-135a(1), including by failing to furnish Plaintiff with a fully completed copy of all contracts and documents pertaining to the solar panel transaction at the time of the purported execution;

   b. Violating Conn. Gen. Stat. §42-135a(2), including by failing to furnish Plaintiff with duplicate cancellation notices in conformance with the statute at the time of the purported execution;

   c. Violating Conn. Gen. Stat. §42-135a(3), including by dating the cancellation notice for the Loan Contract three months after the purported execution;

   d. Violating Conn. Gen. Stat. §42-135a(5), by failing to inform the Plaintiff of his right to cancel the transaction;

   e. Violating Conn. Gen. Stat. §42-135a(5), by misrepresenting to the Plaintiff of his right to cancel the transaction;

   f. Attempting to enforce the contracts against the Plaintiff despite Defendants' numerous violations of Conn. Gen. Stat. §42-135, which make the contracts unenforceable against the Plaintiff and voidable by statute;

g.  Violating Conn. Gen. Stat. §20-427, including by failing to register and/or ensure all of its agents were registered as home improvement sales contractors, and/or employing or allowing a person to act on their behalf who was not registered as a home improvement sales contractor;

h.  Violating Conn. Gen. Stat. §20-429, including by not providing purchase contracts, by forging the Plaintiff's signatures on the financing contracts, misrepresenting the date of the transactions, omitting statutory notice of cancellation rights, and failing to deliver a completed copy of the contracts at the time they were purportedly entered into;

i.  Making false, deceptive, and misleading statements about the transaction, including leading the Plaintiff to believe that the solar panels and installation would be free;

j.  Targeting the Plaintiff for solar panels, despite Plaintiff's vulnerability as an elderly person, and the high cost of solar panels and financing relative to any potential savings;

k.  Forging Plaintiff's signatures on various contract documents;

l.  Misrepresenting the true nature of the transaction;

m.  Knowingly and intentionally dating the financing contract documents three months after the transaction;

n.  Failing to furnish the Plaintiff with a fully completed receipt or copy of all contracts and documents pertaining to the solar panel transaction at the time of its execution, including any notice of cancellation;

o.  Requiring an electronic and paperless transaction despite Plaintiff's age and his evident lack of familiarity with this technology;

p.  Engaging in elder exploitation with respect to the Plaintiff; and/or

q.  Failing to comply with FCRA and TILA.

79. Defendants' actions have offended public policy, including the public policy purpose behind the HIA, HAAS, TILA, FCRA, and the Connecticut elder exploitation statute, Conn. Gen. Stat. §17b-450 et seq.

80. Defendants' actions were immoral, unscrupulous, unethical, and oppressive. Defendants knew or should have known of the requirements of HIA, HSSA, TILA, and FCRA and the special vulnerability of elderly homeowners, including the Plaintiff, to in-person sales tactics and home improvement scams. Defendants nevertheless targeted the Plaintiff for high-cost solar panels, led the Plaintiff to believe that they were free or part of a government plan for seniors, misrepresented the nature of the transaction to the Plaintiff, forged Plaintiff's signature on contracts, failed to provide copies of contracts or notices of right to cancel, and violated numerous consumer protection statutes. Defendants enriched themselves at the expense of the Plaintiff, who they knew to be a vulnerable person, harming the Plaintiff and frustrating public policy intended to protect consumers---especially elderly consumers---from fraud and abusive sales tactics.

81. Defendants' actions cause substantial injury to consumers, like the Plaintiff, who believed he was participating in a free government program but was instead significantly indebted and mislead into purchasing overpriced solar panels with

little utility. These injuries are not outweighed by any countervailing benefits to consumers that the conduct produces.

82. Defendants' misrepresentations and omissions about the solar panels and the nature of the transaction, including leaving Plaintiff to believe that they were part of a free government program and would yield significant savings, were likely to mislead consumers, especially since Defendants failed to provide a copy of the contracts and required an electronic, web-based transaction. Plaintiff interpreted Defendants' misrepresentations and omissions reasonably under the circumstances, and the misrepresentations materially affected his decision with respect to the solar transaction.

83. Plaintiff would not have agreed to the transaction if Defendants had disclosed to him the true nature and cost of the transaction.

84. As a direct, proximate, and foreseeable result of Defendants' violations of the CUTPA, Plaintiff has suffered ascertainable losses, which include Plaintiff's purported contractual obligations under the forged 30-year Loan Contract and the Purchase Contract that to this day has not been provided to the Plaintiff and most likely never existed. Ascertainable losses also include the costs associated with removing the solar panels from the roof of the house, including any necessary repairs. Plaintiff has additionally suffered mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

## COUNT IV
## Intentionally or Reckless Unfair or Deceptive Practices
## In Violation of the Connecticut Unfair Trade Practices Act
### (Plaintiff v. All Defendants)

85. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

86. Defendants' conduct alleged in Count III constituted an intentional and wanton violation of Plaintiff's rights or was done with reckless indifference to those rights. Defendants knew that their conduct offended public policy or was recklessly indifferent to that policy. Defendants' knew that their actions were without reasonable justification or excuse in making false, deceptive, and misleading statements about the transaction, including leading the Plaintiff to believe that the solar panels were free as part of a government program, misrepresenting or concealing the nature of the transaction, forging Plaintiff's signatures, failing to provide copies of the contract and notices of right to cancel, dating the finance contract and cancellation notices three months after the solar panel installation, targeting Plaintiff based on his age and health condition, requiring an electronic web-based transaction despite Plaintiff's age and evident discomfort with this technology, engaging in elder exploitation, and violating HIA, HSSA, TILA, FCRA, and Conn. Gen. Stat. §17b-450.

87. Defendants' consistent contravention of public policy was willful, immoral, unscrupulous, unethical, and oppressive, and caused substantial injury to the Plaintiff. Defendants' actions and omissions were willful and exhibited a blatant disregard for the Plaintiff's well-being.

**COUNT V**
**Elder Exploitation**
**(Plaintiff v. All Defendants)**

88. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

89. Connecticut law provides, "An elderly person who has been the victim of abuse, neglect, exploitation or abandonment, as such terms are defined in section 17b-450, may have a cause of action against any perpetrator and may recover actual and punitive damages for such abuse, neglect, exploitation or abandonment together with costs and a reasonable attorney's fee". Conn. Gen. Stat. §17b-462.

90. The term "exploitation" refers to the act or process of taking advantage of an elderly person by another person or caregiver whether for monetary, personal or other benefit, gain or profit." Conn. Gen. Stat. §17b-450(7).

91. The Plaintiff is an "elderly person" within the meaning of Conn. Gen. Stat. §17b-450(1).

92. Defendants engaged in exploitation of the Plaintiff for financial gain within the meaning of Conn. Gen. Stat. §17b-450(7) by marketing and purportedly selling the Plaintiff solar panels and a solar loan, including by:

   a. Leading the Plaintiff to believe that the solar panels were "free" through a government program;

   b. Misrepresenting the terms of the sale and loan;

   c. Misrepresenting the cost savings;

   d. Proceeding with the purported sale despite the high cost of panels and installation, the lack of savings, the Plaintiff's age and health condition, and

intentionally failing to truthfully respond to Plaintiff's numerous requests for information about the cost;

e.  Forging the Plaintiff's signatures and dates on documents; and

f.  Failing to provide required notices of cancellation and to comply with consumer protection laws.

93. Defendants' exploitation of the Plaintiff constituted an intentional and wanton violation of Plaintiff's rights or was done with reckless indifference to those rights.

94. Defendants' exploitation caused actual damages to the Plaintiff, including his purported obligations under the forged contracts, the cost associated with removing the panels, and emotional distress.

95. Plaintiff is a victim of the Defendants' exploitation, and Defendants are liable to him for actual damages, punitive damages, costs and attorney's fees.


**COUNT VI**
**FRAUDULENT CONCEALMENT**
**(Plaintiff v. All Defendants)**

96. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

97. Defendants intentionally failed to disclose certain facts that were known only to Defendants and the Plaintiff could not have discovered, including that the solar panels were not free, that the Plaintiff's signatures and dates were forged on the documents, that the Plaintiff's credit reports were accessed without his knowledge or consent, and other hidden facts.

98. Defendants prevented Plaintiff from discovering certain facts including that the solar panels were not free, that the Plaintiff's signatures and dates were forged on the documents, that the Plaintiff's credit reports were accessed without his knowledge or consent, and other hidden facts.

99. Defendants intended to deceive the Plaintiff by concealing the facts by, inter alia, not disclosing to him that the solar panels were not free, that the Plaintiff's signatures and dates were forged on the documents, that the Plaintiff's credit reports were accessed without his knowledge or consent, and other hidden facts.

100.    Had the omitted and hidden information been disclosed, the Plaintiff would have reasonably behaved differently, i.e., he would have taken steps to stop the forged and fraudulent transaction.

101.    Plaintiff has been harmed by the fraud and deceit in that he has been damaged in the amount of his financial (and other) obligations under the agreements, has suffered invasion of privacy, and has also suffered mental and emotional distress, worry and aggravation.

102.    Defendants' fraudulent concealment of this transaction was a proximate cause of the Plaintiff's harm.


## V.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

VI.    **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff demands judgment against Defendants for:

a.  Actual and statutory damages;

b.  Punitive damages;

c.  A declaration that the conduct complained of violates the provisions of the Fair Credit Reporting Act 15 U.S.C. §1681b;

d.  A declaratory judgment that the contracts involved herein are void and cancelled;

e.  An Order requiring return of the Plaintiff's confidential consumer report and destruction of any copies;

f.  Equitable relief requiring Defendants to remove the solar panels and repair any damage to Plaintiff's property;

g.  Attorney's fees and costs;

h.  Interest; and,

i.  Such other and further relief as the Court shall deem just and proper.

Respectfully submitted:

Date: September 10, 2025

/s/  Jeanette T. Chambers
JEANETTE T. CHAMBERS (ct05563)
CHAMBERS LAW OFFICES LLC
P.O. Box 4520
Hartford, CT 06147-4520
Tel: (860) 278-8126
Fax: (860) 760-6222
Email: JTC@JCHAMBERSLAW.COM

*Attorney for the Plaintiff*